IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ROBERT GOTSCHALL, | CV 18-00163-BLG-SPW-TJC |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| TONY HARBAUGH–SHERIFF, PAT ROOS–UNDERSHERIFF, ROLAND MCGRATH–SERGEANT, and KIM JERKE–RN, | |
| Defendants. | |

Pending are Defendant's Motion for Summary Judgment (Doc. 23) and

Plaintiff Robert Gotschall's Motion for Order of Production of Evidence (Doc. 30)

and Request for Summary Judgment (Doc. 34). Mr. Gotschall's motion for

production of evidence will be denied. Defendants' motion for summary judgment

should be granted, Mr. Gotschall's request for summary judgment should be

denied, and this matter should be dismissed.

## I. MOTION FOR ORDER OF PRODUCTION

Mr. Gotschall seeks an order requiring Montana State Prison (MSP), where

he is currently incarcerated, to photograph, date, and time his flanges for five

consecutive changes so the Court and defense can see his evidence. It is not the

Court's obligation to obtain evidence for Mr. Gotschall. Mr. Gotschall could have

1

requested his own medical records from MSP during discovery and produced such records in response to Defendants' motion for summary judgment.  He did not do so.  The motion will be denied.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S.

2

at 325); *see also* Fed.R.Civ.P. 56(c)(1)(B).  Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  To establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed.R.Civ.P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence."  *Lopez v. Smith*, 203 F.3d

1122, 1132 n.14 (9th Cir. 2000) (en banc).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586 (citations omitted).

Defendants advised Mr. Gotschall of the requirements for opposing a motion for summary judgment in the February 7, 2020 "Notice and Warning to Plaintiff" (Doc. 26).  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## III.  FACTS

The events giving rise to this case occurred while Mr. Gotschall was an

inmate at the Custer County Detention Center (CCDC) from April 14, 2017

through November 14, 2017 when he transferred to MSP.  (Defendants' Statement

of Undisputed Fact, Doc. 25 (hereinafter "SUF") at ¶ 1.)[1]  Mr. Gotschall first met

with CCDC Nurse Kim Jerke on April 21, 2017.  (Jerke Aff., Doc. 25-2 at 2, ¶ 5.)

Mr. Gotschall explained to Nurse Jerke that he had rectal surgery in March of 2016

to remove cancer and had a colostomy as a result.[2]  Mr. Gotschall indicated he had

been changing the colostomy flange almost daily.  (SUF at ¶ 3-4.)  Nurse Jerke had

experience caring for patients with colostomies in nursing home settings, home

settings, and clinical settings.  (Jerke Aff., Doc. 25-2 at 2, ¶ 3.)  It was her

understanding that the standard of care was to change a colostomy bag once per

week unless otherwise indicated.  (SUF at ¶ 6.)

Nurse Jerke examined Mr. Gotschall and found the skin around the stoma

was very reddened, irritated, and friable as a result of the frequent changing.

Additionally, Nurse Jerke did not believe Mr. Gotschall was cutting the flange

correctly to fit around the stoma, which resulted in leakage, odor, and skin

---

[1]Mr. Gotschall did not file a statement of disputed facts as required by Local Rule 56.1(b), therefore, unless otherwise refuted by the record, Defendants' statement of facts will be deemed admitted.

[2]According to the medical records provided by Defendants, on March 7, 2016, Mr. Gotschall underwent an abdominoperineal resection with permanent colostomy as treatment for rectal cancer.  Later tests revealed a possible persistent or recurrent pelvic abscess.  (Dr. Nichols May 22, 2017 progress note, Doc. 25-3 at 70.)

irritation.  (SUF at ¶ 3, 5.)

On April 24, 2017, Nurse Jerke spoke to Dr. Grantham, one of Mr. Gotschall's physicians in Miles City.  Dr. Grantham did not feel Mr. Gotschall needed a follow up appointment for continued medical services at that time. According to Nurse Jerke's medical note, Dr. Grantham's order said to change the bag as needed.  (Doc. 25-3 at 62.)  Nurse Jerke testified that she spoke to Dr. Grantham's staff about the frequency of changing the colostomy bag and appliance.  Dr. Grantham was supposed to specify the order and send Nurse Jerke a copy.  (Doc. 25-3 at 62.)

The medical records from Dr. Grantham's office indicate that on April 27, 2017, an e-mail was sent to Dr. Grantham from her medical assistant stating:

> Are you willing to change script for his colostomy to once a week change or prn as needed.  Patient is insistent that he is to change this every 2 days.  He is not having blow outs or any concerning results to be changing this every 2 days.  Please advise.

Dr. Grantham responded on May 4, 2017 stating, "I am ok with the change, if it will be covered."  The medical assistant then made the following notation: "Patient is to only change his colostomy bag once a week or prn displacement of phalange or bag."  (Doc. 25-3 at 67.)

According to Nurse Jerke's April 24, 2017 medical note, Mr. Gotschall had been insisting on daily changes and the jail had allowed changes three times a week.  After getting Dr. Grantham's revised order, however, Nurse Jerke

implemented the changing of the colostomy flange once per week unless the conditions warranted an as needed change as well.  (SUF at ¶ 6, April 24, 2017 Note, Doc. 25-3 at 62.)

On May 22, 2017, Mr. Gotschall was seen by Dr. Nichols, a local general surgeon, regarding his complaints about his colostomy and pelvic pain with sitting. Nurse Jerke accompanied him on that appointment.  (SUF at ¶ 7.)  Dr. Nichols noted that Mr. Gotschall appeared in no distress and his ostomy was healthy.  He recommended that Mr. Gotschall be evaluated by a surgeon and interventional radiology for a further attempt at drainage of the pelvic fluid collection.  Dr. Nichols recommended care in higher level of care institution.  (Doc. 25-3 at 70-71.)  Nurse Jerke testified that pursuant to Dr. Nichols's instructions, the schedule for changing Mr. Gotschall's flange was changed to "as needed every 4-7 days, under supervision."  (SUF at ¶ 7.)

On June 23, 2017, Mr. Gotschall's defense counsel in his criminal proceedings filed a Motion to Receive Medical Care seeking a court order requiring the jail to allow Mr. Gotschall to change his ostomy bag every two days, that he be given his prescriptions based on a June 21, 2017 printout from Holy Rosary Hospital, and that he be released on furlough to attend a June 28, 2017 appointment at the Billings Clinic—Miles City to check his ostomy bag.  (Doc. 27-1 at 5-7.)

On June 28, 2017, Mr. Gotschall was seen at the Billings Clinic in Miles City by Stormy Jensen, NP.  Mr. Gotschall reported that he was having significant rectal pain and had not been getting anything for pain while incarcerated.  NP Jensen discussed Mr. Gotschall's care with Nurse Jerke who indicated that no prisoners were allowed to receive any type of controlled substances and that he had been receiving 400 mg of ibuprofen three times a day.  Mr. Gotschall indicated that the ibuprofen was not coming anywhere close to improving his pain and it had been quite some time since he had any morphine for his pain.  Nurse Jerke reported to NP Jensen that Mr. Gotschall had a bottle of morphine when he was first incarcerated but that the bottle contained both 30 mg tablets and 15 mg tablets and the date of the prescription was March 2017.[3]  Nurse Jerke reported to NP Jensen that Mr. Gotschall would not be able to obtain chronic pain medication while in the prison "as it is a policy."  (Doc. 25-3 at 85.)

At this visit, Mr. Gotschall was adamant that he needed to have his colostomy bag changed every two days.  Nurse Jerke told NP Jensen that Dr. Nichols had informed Mr. Gotschall that he did not require colostomy changes more frequently than every four days.  Mr. Gotschall reported skin breakdown

---

[3] NP Jensen's progress note from the Billings Clinic indicates that Mr. Gotschall had a March 2017 prescription for 180 tablets of 15 mg morphine and 56 tablets of 30 mg morphine.  There were no refills indicated for these prescriptions. (Doc. 25-3 at 86.)

around the colostomy which in his opinion was caused by not being able to change the bag as frequently as he would like.  (Doc. 25-3 at 86.)

According to her note, NP Jensen discussed with Mr. Gotschall that she was unable to give him a prescription for narcotic pain medication because he would not be able to receive it in the jail.  Instead, NP Jensen gave Mr. Gotschall a prescription for 600 mg of ibuprofen to be taken three times a day as needed for pain.  According to her note she also discussed with Mr. Gotschall that his colostomy only needed to be changed every 4-7 days per the recommendation of Dr. Nichols.  At the same appointment, Mr. Gotschall's Infuse-a-Port was flushed. Nurse Jerke implemented these orders and Mr. Gotschall's colostomy was changed twice a week and he received the ibuprofen as prescribed.  (SUF at ¶ 8-9, 14; Doc. 25-3 at 94.)

Because of Mr. Gotschall's complaints about the frequency of the colostomy changes, on July 6, 2017, Nurse Jerke asked Dr. Nichols to verify his order.  Dr. Nichols wrote a letter to Mr. Gotschall dated July 6, 2017 but signed on July 10, 2017, indicating that Mr. Gotschall's colostomy was to be changed per the "normal colostomy care protocol" and/or Nurse Jerke's judgment.  (SUF at ¶ 10; Doc. 25-3 at 92.)

On August 1, 2017, Mr. Gotschall was furloughed for a medical appointment in Billings and was examined by Dr. Fabregas and Dr. Maier.  These

appointments were made by Mr. Gotschall's girlfriend who took him to the

appointments.  (SUF at ¶ 11,16.)  The medical records indicate that Mr. Gotschall

requested a prescription for morphine, but Dr. Fabregas told him he should follow

up with his current treating physician for pain management.  The note indicates

that Mr. Gotschall previously had a controlled substance agreement with another

provider.  (SUF at ¶ 11, Doc. 25-3 at 94.)

Dr. Maier saw Mr. Gotschall regarding his pelvic fluid collection and

parastomal hernia.  Dr. Maier recommended against surgical drainage of the fluid

collection at that point.  He indicated that a long term drain from this area would

not be good in Mr. Gotschall's current prison setting and would put him at risk for

an infection.  Dr. Maier indicated he would clarify the situation regarding ostomy

changes with Nurse Jerke.  (Doc. 25-3 at 96.)

On August 1, 2017, Dr. Maier wrote a note recommending that Mr.

Gotschall's ostomy appliance be changed <u>at least</u> every 2 days.  (Doc. 25-3 at 98,

emphasis in original.)  Nurse Jerke called Dr. Maier for clarification as this

conflicted with the other orders she had been given.  (SUF at ¶ 12.)  On August 11,

2017, Dr. Maier wrote a second note indicating that Mr. Gotschall's ostomy

appliance should be changed with nursing supervision twice a week to assure

proper fit and care of his appliance.  (Doc. 25-3 at 99.)  As a result of her

conversation with Dr. Maier, Nurse Jerke continued the schedule for changing the

colostomy twice a week, under her supervision.  (SUF at ¶ 12.)

Sometime between August 1 and August 11, 2017, Mr. Gotschall's counsel filed a Motion to Direct Detention Facility to Follow Medical Recommendation which was supported by Dr. Maier's August 1, 2017 letter.  State District Court Judge Hayworth then issued an Order which in substance provided that "the Custer County Detention Facility shall follow the medical recommendations stated in the letter from Dr. Maier of Surgical Associates P.C., dated August 1, 2017 . . ." (Second Order Directing Detention Facility to Follow Medical Recommendation, Doc. 25-3 at 35.)  The State attached Dr. Maier's August 11, 2017 letter to their response to Mr. Gotschall's motion.  On August 11, 2017, based on Dr. Maier's second letter, Judge Hayworth issued a second order stating, "the jail shall facilitate the Defendant's ostomy appliance changes with nursing supervision twice a week, and provide over the counter stool softeners as needed."  (Second Order, Doc. 25-3 at 35-36.)

With respect to treatment of pain, Mr. Gotschall asserted in his disclosure statement that there were court documents stating that he needed to get on pain management and ibuprofen was not pain management when he was on morphine. He claimed that CCDC received Dr. Bubbers's order for surgery and that he was on morphine.  He stated CCDC knew he was in severe pain and told him he was faking it.  (Doc. 14 at 2-3.)  He testified that he had been taking morphine since his

diagnosis.  (Gotschall Depo. 29:2-4, Doc. 25-1 at 5.)

Mr. Gotschall requested pain medications from Dr. Murray (when he took his port out) (Gotschall Depo. 88:14-15, Doc. 25-1 at 10); Dr. Fabregas (Doc. 25-3 at 94); and NP Jensen (Doc. 25-3 at 94).  Mr. Gotschall was prescribed 600 mg of ibuprofen three times per day for pain from Stormy Jensen, NP and he was prescribed Gabapentin by Dr. Schulke.  This medication was administered regularly and as ordered.  (SUF at ¶ 14.)

CCDC does not allow narcotics into the facility nor would the facility allow an individual to "drop off" a bottle of prescription medications for an inmate containing a mixture of medications.  (SUF at ¶ 13.)  Nurse Jerke informed various medical providers who examined Mr. Gotschall, that CCDC does not allow narcotic drugs into the facility.  She did not instruct any provider not to prescribe pain medication to Mr. Gotschall.  (SUF at ¶ 15, 19.)

Mr. Gotschall is a recovering drug addict.  (SUF at ¶ 17.)  He clarified in his motion for summary judgment response that he has been clean from drugs for 15 years and even when he was using drugs it was methamphetamine, not pills.  (Doc. 27 at 2.)

During his seven-month incarceration, Mr. Gotschall received care from outside medical providers including:  (Holy Rosary, Miles City) Dr. Nichols, May 22, 2017; (Billings Clinic, Miles City) Stormy Jensen, NP, June 28, 2017; (Billings

Clinic, Billings) Dr. Fabregas and Dr. Maier, August 1, 2017; (Billings Clinic, Billings) Dr. Murry, August 24, 2017; and (Broadwater Clinic, Billings) Dr. Schulke, August 25, 2017.  (SUF at ¶ 18.)

## IV.  ANALYSIS

This matter was served on Defendants Harbaugh, Roos, McGrath, and Jerke based upon Mr. Gotschall's allegations that Defendants were deliberately indifferent to his serious medical needs when they denied him the right to change his flanges and colostomy bag with a special deodorant every two days as ordered by his primary care physician, and denied him his medications because they did not have time to monitor him.  (Service Order, Doc. 6 at 1 citing Complaint, Doc. 2 at 12.)  Mr. Gotschall alleged that he had been denied a surgery in his September 4, 2019 Disclosure Statement (Doc. 14 at 2, ¶ 6), but this claim was not alleged in the Complaint and there is insufficient information in the record to support such a claim.  Therefore, the Court will only address Mr. Gotschall's claims regarding his colostomy bag and pain medications.

The Court evaluates a pretrial detainee's Fourteenth Amendment claim under an objective deliberate indifference standard.  *See Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (applying objective standard to medical care claims and describing similar treatment afforded medical care and other conditions of confinement claims) (*citing Kingsley v. Hendrickson*, ––– U.S.

——, 135 S. Ct. 2466, 2475, 192 L. Ed. 2d 416 (2015), and *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016), *cert. denied*, —— U.S. ——, 137 S. Ct. 831, 97 L. Ed. 2d 69 (2017)).

A pretrial detainee must demonstrate a defendant's acts or omissions were objectively unreasonable, and identify objective facts indicating the "challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that [objective]." *Kingsley*, 135 S. Ct. at 2473-74.  This determination is to be made keeping in mind that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell v. Wolfish*, 441 U.S. 520, 547-48 (internal quotations and citations omitted).

To state a Fourteenth Amendment conditions of confinement claim, a pretrial detainee must allege that (1) "the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined"; (2) "those conditions put the plaintiff at substantial risk of suffering serious harm"; (3) "the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct

obvious"; and (4) "by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon*, 888 F.3d at 1125; *Castro*, 833 F.3d at 1071.

"With respect to the third element, the defendant's conduct must be objectively unreasonable . . .." *Gordon*, 888 F.3d at 1125 (*quoting Castro*, 833 F.3d at 1071). Therefore, Mr. Gotschall must show that a defendant caused his injury by "purposely or knowingly" failing to take appropriate measures to abate a risk of serious harm and that this failure was "objectively unreasonable." *Castro*, 833 F.3d at 1069 (*quoting Kingsley*, 135 S. Ct. at 2472-73). Showing an officer's actual awareness of the substantial risk of harm is not required, but a pretrial detainee must "prove more than negligence but less than subjective intent— something akin to reckless disregard" *Castro*, 833 F.3d at 1071; *Gordon*, 888 F.3d at 1125.

As a pretrial detainee, Mr. Gotschall has the right to be free from punishment under the Fourteenth Amendment. *Bell*, 441 U.S. at 533. But "not every disability imposed during pretrial detention constitutes 'punishment' in the constitutional sense." *Bell*, 441 U.S. at 537. Punitive conditions may be shown where the challenged restrictions (1) are expressly intended to punish, or (2) serve an alternative, non-punitive purpose but are nonetheless "excessive in relation to the alternative purpose." *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (*quoting Bell*, 441 U.S. at 538) (internal quotation marks omitted). Legitimate,

non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security and effective management of a detention facility.  *See Bell*, 441 U.S. at 540.

An institution must provide prisoners and pretrial detainees "adequate food, clothing, shelter, sanitation, medical care, and personal safety."  *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996), *overruled on other grounds in Marley v. United States*, 548 F.3d 1286 (9th Cir. 2008).  However, the Constitution "does not mandate comfortable prisons[.]"  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Conditions of confinement "may be, and often are, restrictive and harsh[.]" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (*citing Rhodes*, 452 U.S. at 347).

## A.  Colostomy bag

Nurse Jerke examined the area around Mr. Gotschall's colostomy when he was incarcerated at CCDC.  She found the skin around the stoma was very reddened, irritated, and friable as a result of the frequent changing and she believed Mr. Gotschall was not cutting the flange correctly to fit around the stoma, which resulted in leakage, odor, and skin irritation.  (SUF at ¶ 3, 5.)  Nurse Jerke had a phone conversation with staff at the office of Dr. Grantham, Mr. Gotschall's

physician in Miles City, and as a result implemented the changing of the colostomy flange once per week.  (SUF at ¶ 6.)  Mr. Gotschall was taken to Dr. Nichols, a local general surgeon, on March 22, 2017.  Dr. Nichols instructed that the flange should be changed "as needed every 4-7 days, under supervision."  (SUF at ¶ 7.)  Five weeks later, on June 28, 2017, Mr. Gotschall was seen at the Billings Clinic and a nurse practitioner ordered that Mr. Gotschall should change his colostomy as needed every 4-7 days with Nurse Jerke's assistance.  Nurse Jerke implemented this order and Mr. Gotschall's colostomy was changed twice a week.  (SUF at ¶ 8-9, 14.)  Because of Mr. Gotschall's complaints about the frequency of the colostomy changes, Nurse Jerke verified Dr. Nichols's order on July 6, 2017.  Dr. Nichols reiterated that the colostomy was to be changed per the normal protocol and/or Nurse Jerke's judgment.  (SUF at ¶ 10.)

Based on this undisputed evidence, Defendants have met their burden of showing that they took reasonable available measures to abate any risk of serious harm to Mr. Gotschall.  Nurse Jerke received instructions from no less than three other medical providers to determine the proper frequency of changing the colostomy and she implemented their instructions.  In addition, a state district court ordered CCDC to change the bag only twice a week.  Mr. Gotschall has produced no evidence other than his own opinion to indicate that the colostomy should have been changed more frequently.

17

Even if Medicaid will reimburse the cost of 20 bags and 20 flanges a month to Mr. Gotschall, or if he changes his bag every two days at MSP or when he is not in jail (Doc. 27 at 1), that is not sufficient to demonstrate that Defendants were reckless with their treatment of Mr. Gotschall.  Mr. Gotschall also represents that the "national protocol" is to change a colostomy every 2-3 days, but he presents no evidence to support that claim.  (*Id.* at 2.)

Differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  "A difference of medical opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Instead, "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (*quoting Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).  That is, Mr. Gotschall must demonstrate that the decision to only change his colostomy twice a week was medically unacceptable and done in conscious disregard to Mr. Gotschall's health.  Mr. Gotschall cannot

make this showing.  The treatment provided at CCDC was consistent with the

instructions provided by three other outside medical providers and an order of the

state district court

Defendants' motion for summary judgment on this issue should be granted.

### B.  Pain Medications--Morphine

It is undisputed that Defendants made an intentional decision to deny Mr.

Gotschall morphine and/or other narcotic pain medications because such

medications were not allowed in the facility.  But there is no genuine issue of

material fact that Defendants took reasonable available measures to abate that risk.

It is undisputed that Mr. Gotschall was initially provided 400 mg of

ibuprofen three times a day for pain when he entered CCDC.  That was increased

to 600 mg of ibuprofen three times a day by NP Jensen on June 28, 2017.  He was

then given Gabapentin for his pain after his August 25, 2017 appointment with Dr.

Schulke.  Mr. Gotschall's disagreement with the effectiveness of those medications

is insufficient to establish a Fourteenth Amendment claim.

Courts have routinely held that the decision to provide alternative pain

medications does not establish deliberate indifference.  *See Fausett v. LeBlanc*, 553

Fed.Appx. 665 (9th Cir. 2014) (affirming summary judgment for defendants where

doctors did not provide Valium ordered in hospital-discharge instructions after

spinal-fusion surgery and instead provided substitute medicine and other pain

medications); *Gauthier v. Stiles*, 402 Fed.Appx. 203 (9th Cir. 2010) (plaintiff's disagreement with the dosage and type of pain medication administered after surgery not deliberate indifference); *Shiira v. Hawaii*, 706 Fed. Appx. 436 (9th 2017) (affirming summary judgment for defendants who deprived plaintiff of methadone and Percodan but offered over-the-counter pain medication and treatment for potential detoxification symptoms; plaintiff's expert did not testify that offering alternative pain medications would be medically inappropriate).

Therefore, the fact that Mr. Gotschall disagrees with Defendants' decision not to provide him with specific pain medications does not plausibly support a Fourteenth Amendment claim.

## V.  CONCLUSION

Defendants have met their burden of proving "that there is an absence of evidence to support" Mr. Gotschall's Fourteenth Amendment claims regarding his medical care at CCDC.  *See Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed.R.Civ.P. 56(c)(1)(B).  Mr. Gotschall, in turn, failed to establish that a genuine issue as to any material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Mr. Gotschall simply relies upon his own disagreement with Defendants' treatment.  There is a failure of proof concerning several essential elements of Mr. Gotschall's claim necessitating entry of summary judgment.  *See Celotex*, 477 U.S. at 322.  He has

not tendered any evidence to establish a genuine issue of material fact regarding his claims of deliberate indifference to his serious medical needs.  At most, Mr. Gotschall has established a difference of opinion regarding his medical treatment, which is insufficient to maintain an Eighth Amendment claim of deliberate indifference to a serious medical need.

Mr. Gotschall provided no evidence to demonstrate that a reasonable jury could return a verdict in his favor.  See *Anderson*, 477 U.S. at 248.  Defendants are entitled to summary judgment.

Based upon the foregoing, the Court issues the following:

## ORDER

Mr. Gotschall's Motion for Order of Production of Evidence (Doc. 30) is DENIED.

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Defendant's Motion for Summary Judgment (Doc. 23) should be GRANTED.

2.  Mr. Gotschall's Request for Summary Judgment (Doc. 34) should be DENIED.

3.  The Clerk should be directed to enter judgment in favor of Defendants and close this matter.

4.  The Clerk of Court should also be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen days after service (mailing) hereof.[4]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P.  4(a), should not be filed until entry of the District Court's final judgment.

DATED this 17th day of September, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

---

[4]Mr. Gotschall shall have three additional days after this period would otherwise expire pursuant to Rule 6(d) of the Federal Rules of Civil Procedure.

22